IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FLOYD KEITH GRASS, )<br>)<br>Defendant. ) | No. CR-07-142-C |

MEMORANDUM OPINION AND ORDER

Defendant is charged in a one count indictment with possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). Defendant filed a motion to suppress the evidence allegedly obtained as a result of an illegal arrest, search, and seizure. (Dkt. No. 19.) The government has responded. (Dkt. No. 20.) On August 7, 2007, the Court conducted an evidentiary hearing, and as announced in open court on this date, Defendant's motion is hereby DENIED.

Shawnee police officer Lieutenant Frantz testified that on September 20, 2006, Shawnee police officers responded to a call advising that someone was banging on apartment doors and wanting to fight. Lieutenant Frantz, who knew that prior criminal activity had occurred at this apartment complex, was dispatched to the scene. When Lt. Frantz arrived, he observed a white Buick LeSabre in the parking lot; it was parked "cockeyed" and not within a designated space. A female Native American was sitting in the passenger seat. As Lt. Frantz approached, he saw Defendant standing in the middle landing of an open staircase above the apartment. Three other men were standing at the top of the staircase. Lt. Frantz

thought it was unusual that none of the three men looked at the police officer when he arrived, and their unusual actions led Lt. Frantz to believe he probably found the person who wanted to fight.

Lt. Frantz asked from the ground level what was going on. Defendant, on the middle landing, said he was looking for a friend. According to Lt. Frantz, Defendant appeared nervous, talked fast, and walked toward the top of the stairs while speaking to the police officer. Lt. Frantz then asked Defendant what his friend Dudlow's first name was, and Defendant claimed not to know. Lt. Frantz asked Defendant to identify himself. Defendant said his name was Kevin James. According to Lt. Frantz, Defendant hesitated when answering, which the officer found unusual, and when asked for identification, Defendant looked around and asked, "Who me?" Lt. Frantz responded, "Yes, you," and Defendant said that he did not have any identification.

At this point, Lt. Frantz noticed that Defendant had bulges in his pockets and what appeared to be a wallet in Defendant's back pocket. Concerned that Defendant might get to the top of the stairs and enter an apartment, Lt. Frantz climbed to the mid-level landing of the staircase and ordered Defendant, who was by then near the top of the staircase, to come down. Defendant descended to the middle landing, but then he turned to continue walking past Lt. Frantz and down the stairs. Because Defendant turned and ducked as if he was going to run, Lt. Frantz grabbed the back of Defendant's shirt. Lt. Frantz claims that Defendant shoved his hand into his bulging right pants pocket, and Lt. Frantz asked Defendant to remove his hand. Lt. Frantz testified that Defendant pulled from his pocket a Jennings .22

caliber Model J-22 pistol. Lt. Frantz pushed Defendant against the stair railing while yelling at him to drop the gun. Lt. Frantz then grabbed and secured Defendant's gun and handcuffed Defendant. A subsequent search resulted in the discovery of a .22 caliber bullet in Defendant's right front pocket. At the jail, Defendant waived his Miranda warnings and stated that he got his gun off a crackhead by the car wash.

The Court finds Lt. Frantz's testimony to be credible, and the evidence clearly demonstrates that Lt. Frantz did not commit any Fourth Amendment violations in detaining and arresting Defendant. A brief investigatory or Terry stop is appropriate when officers have a reasonable, articulable suspicion that criminal activity has occurred or is occurring. See Terry v. Ohio, 392 U.S. 1, 27 (1968). The stop must be justified at its inception, however, and the resulting detention must be reasonably related in scope to the circumstances that justified the interference in the first place. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998) (internal quotation marks omitted). The reasonableness of a stop is gauged "by an objective standard taking the totality of the circumstances and information available to the officer[] into account." United States v. Lang, 81 F.3d 955, 965 (10th Cir. 1996). The government bears the burden of proving the reasonableness of the officer's suspicion. Salzano, 158 F.3d at 1111.

In this instance, the government has satisfied its burden. The officer's belief that the Defendant might be involved in criminal activity was reasonable and justified the stop. Defendant's nervous and unusual behavior, hesitation when giving his name, and attempt to duck and bypass Lt. Frantz all further supported the officer's reasonable suspicion of

3

Defendant's criminal activity or involvement.  See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (explaining that the characteristics of a location, such as the area being known as one of high crime, a person's evasive behavior, and unprovoked flight upon noticing the police, may justify a Terry stop even if there are innocent explanations for those actions).

     Lt. Frantz was justified in grabbing the moving, nervous Defendant, whose pockets were bulging, because an officer can take reasonable steps to protect himself and bystanders during an investigatory detention when danger is present.  United States v. Carter, 360 F.3d 1235, 1240 (10th Cir. 2004); United States v. Merkley, 988 F.2d 1062, 1064 (10th Cir. 1993).  And when Defendant pulled a gun out of his pocket, Lt. Frantz was placed in a dangerous situation that justified his taking the firearm from Defendant and conducting a frisk.  If a law enforcement officer meets the Fourth Amendment standard necessary to initiate an investigative detention and believes the individual is armed and dangerous, he has the authority to conduct a limited pat-down search.  Terry, 392 U.S. at 27 (noting that "the standard is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger").  In determining that Lt. Frantz acted reasonably under the circumstances, the Court must give due weight to the specific, reasonable inferences that the officer was entitled to draw in light of his experience.  Id.

     Therefore, for the reasons set forth more fully herein and as announced at the evidentiary hearing, Defendant's motion to suppress (Dkt. No. 19) is DENIED.

     IT IS SO ORDERED this __7th___ day of August, 2007.

_____
ROBIN J. CAUTHRON
United States District Judge